Donald Lee **BLACKWELL**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 2–86–065–CR.

Court of Appeals of Texas, Fort Worth.

April 6, 1989.

Charlotte A. Harris, Public Defender, and R.D. Rucker, Asst. Public Defender, Wichita Falls, for Donald Lee Blackwell.

Barry L. Macha, Dist. Atty., and Rick. L. Mahler, Asst. Dist. Atty., Wichita Falls, for State.

Before WEAVER, C.J., and JOE SPURLOCK, II and KELTNER, JJ.

KELTNER, Justice.

The sole question in this appeal is whether Donald Lee Blackwell was harmed by the trial court's action in instructing the jury on the laws of parole pursuant to TEX.CODE CRIM.PROC.ANN. art. 37.07 (Vernon 1981). After the trial of this case, the Court of Criminal Appeals determined that article 37.07 was unconstitutional because it violates the separation of powers and the due course of law provisions of the Texas Constitution. *Rose v. State,* 752 S.W.2d 529, 552 (Tex.Crim.App.1987) (opinion on court's own motion for reh'g) (per curiam).

At the punishment phase of his trial, Blackwell objected to the trial court's charge on the basis that article 37.07 was unconstitutional. Nevertheless, the trial court overruled the objection and gave the following instruction on parole:

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not be eligible for parole until the actual time served equals one-third of the sentence imposed or 20 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment,

because the application of these laws will depend on the decisions made by prison and parole authorities.

Additionally, the court gave the following curative instruction that was mandated by article 37.07:

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Before the Court of Criminal Appeals announced its decision in *Rose,* we affirmed Blackwell's conviction. *Blackwell v. State,* 738 S.W.2d 78 (Tex.App.—Fort Worth 1987). Because of its ruling in *Rose,* the Court of Criminal Appeals vacated our judgment and remanded the case to us for further consideration, *Blackwell v. State,* 761 S.W.2d 21 (Tex.Crim.App.1988) (per curiam).

In accordance with the Court of Criminal Appeals' opinion on rehearing (hereinafter referred to as *Rose II*), we must determine whether the trial court's instruction on parole caused reversible error in Blackwell's case. *Rose,* 752 S.W.2d at 533. We hold that the error did cause reversible error, reverse Blackwell's conviction, and remand for a new trial on punishment.

The Court of Criminal Appeals requires us to apply TEX.R.APP.P. 81(b)(2) to determine whether the error in giving the unconstitutional instruction requires a reversal of the conviction. Rule 81(b)(2) provides that if there is error, an appellate court must reverse the judgment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Therefore, in order to affirm the judgment, we must determine beyond a reasonable doubt that the error did not make any contribution to Blackwell's punishment.

In making this determination, we would ordinarily be guided by the Court of Criminal Appeals' opinion in *Rose II.* However, there was no clear majority in that opinion,

but, merely a plurality of views. Nonetheless, it is obvious that the court considered a number of factors to be important in the harm analysis. They include (1) the sentence imposed compared to the range of punishment; (2) the aggravating or extenuating facts of the case; (3) the defendant's prior criminal record; (4) the court's charge on punishment; and, arguably (5) the final arguments mentioning the effect of parole. *Rose*, 752 S.W.2d at 554.

The court also emphasized that we must apply a rebuttable presumption that the jury followed any curative instruction given by the trial judge. *Id., citing Cobarrubio v. State*, 675 S.W.2d 749, 752 (Tex.Crim. App.1983).

We now apply the facts of this case to the harm analysis suggested by *Rose II.*

First, the range of punishment for aggravated robbery was five years to ninety-nine years or life confinement plus a fine of up to $10,000. *See* TEX.PENAL CODE ANN. sec. 12.32 (Vernon Supp.1989). Blackwell received punishment of twenty-five years and no fine. This factor, in and of itself, indicates that the jury was not overly influenced or may have ignored the laws of parole.

Second, the facts of this case are aggravated. The record reflects that Blackwell disguised himself as a security guard and lured his victim out of a motel room on the pretense that the victim's truck had been burglarized. Once outside, Blackwell robbed his victim at gunpoint.

Third, the State introduced evidence that although Blackwell was only thirty-eight years old, he had four prior felony convictions. There is little doubt that the jury took these convictions into consideration when assessing punishment.

Fourth, we note that both the State and the defense attorney discussed the law of parole in their final arguments to the jury. This factor would tend to show that the jury did consider the law of parole when considering punishment. In this regard, we must emphasize that it was not error

for either the State or the defendant to argue the law of parole to the jury. In doing so, they were merely arguing the court's charge.

Fifth, the court's charge to the jury, which is quoted above, mirrored article 37.-07. In doing so, it contained a curative instruction, instructing the jury not to consider how the law of parole might be applied to Blackwell. In *Rose II*, the Court of Criminal Appeals placed great emphasis on curative instructions and held that a rebuttable presumption exists that the jury followed the trial judge's instructions.

However, we must note that the instruction in *Rose* contained an additional curative instruction that was not given in the instant case. In *Rose*, the jury received the following additional instruction:

> You are further instructed that in determining the punishment in this case, you are not to discuss among yourselves how long the defendant will be required to serve any sentence you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and the Governor of the State of Texas and are no concern of yours.

*Rose*, 752 S.W.2d at 554. Nonetheless, at least one sister court of appeals has applied the rebuttable presumption to the same curative instruction given in this case. *Montgomery v. State*, 760 S.W.2d 323, 326 (Tex.App.—Dallas 1988, no pet.).

We are troubled by the use of the rebuttable presumption. In the harmless error analysis, we are required to use objective facts to determine whether the trial court's instruction on parole subjectively influenced the jury's verdict. At best, this is a difficult task. The presumption compounds this task because we must assume that the jury followed the court's instruction on the law of parole, but refused to apply this knowledge to Blackwell. If the rebuttable presumption is followed blindly, all but the most unusual *Rose* cases must be affirmed regardless of the analysis of other factors mentioned in the *Rose II* opinion.[1]

---

1. We also note that evidence to rebut the presumption will be rare. It is currently unclear

whether a juror will be permitted to testify whether the jury considered the law of parole in

Nonetheless, the peculiar facts of this case are sufficient to rebut the presumption that the jury obeyed the trial court's instructions to not apply the parole law to Blackwell.

Blackwell filed a motion for new trial alleging jury misconduct. A hearing was held on the motion and three jurors testified about their deliberations. One juror testified that the jury not only discussed the law of parole, but decided Blackwell's punishment on the basis that he would have to serve only one-third of his sentence before being eligible for parole. A second juror testified that while the jury did not predict how the law would be applied to Blackwell, discussions did center around the fact that Blackwell would have to serve one-third of his sentence before being eligible for parole. A third juror testified that the jury not only discussed the law of parole, but that she considered the parole law in determining Blackwell's sentence. She also testified that other jurors discussed how long it would take before Blackwell would be released and his age at the time of release.[2]

In light of the jurors' testimony, we cannot conclude beyond a reasonable doubt that the error in instructing the jury on the law of parole made no contribution to punishment. *See Gil v. State,* 756 S.W.2d 108, 109 (Tex.App.—Austin 1988, no pet.) (reversed and remanded for new punishment phase because juror's affidavit stated that the jurors applied parole law to the particular defendant).

Accordingly, the judgment of the trial court is reversed and remanded for new trial on punishment only pursuant to TEX. CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp.1989). *See Rutledge v. State,* 749 S.W.2d 50, 54 (Tex.Crim.App. 1988); *Woods v. State,* 764 S.W.2d 281, 284 (Tex.App.—Houston [14th Dist.] 1988, no pet.) (Court of Appeals on remand pursuant to *Rose,* reversed and remanded for new trial on punishment alone).

---

assessing a particular defendant's punishment. The rule seems to be ambiguous on this issue. TEX.R.CRIM.EVID. 606(b) provides that a juror "may not testify as to any matter or statement occurring during ... the jury's deliberations *or* to the effect of anything upon his or any other juror's mind or emotions...." *Id.* (emphasis added). However, in the same sentence, the rule provides that "a juror may testify as to any matter relevant to the validity of the verdict or indictment."

The only other evidence that will routinely arise are written notes from the jury, either on a verdict form or to the court.

2. This case was tried in March, 1986, before the new rules of criminal evidence became effective on September 1, 1986. As a result, the trial court was not concerned with new Rule 606(b).