**Anthony Lee GARRETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 746–95.

Court of Criminal Appeals of Texas, En Banc.

May 28, 1997.

Gary A. Udashen, Dallas, for appellant.

Lori L. Ordiway, Asst. Dist. Atty., Dallas, Matthew Paul, State's Atty., Austin, for State.

OVERSTREET, Judge, dissenting on appellant's petition for discretionary review.

Appellant was indicted for the offense of capital murder pursuant to V.T.C.A. Penal Code, § 19.03(a)(2), alleged to have been committed on or about April 26, 1992. In a trial by jury in the 204th District Court of Dallas County, appellant was convicted of the lesser included offense of murder. He was sentenced to 99 years confinement in the Texas Department of Criminal Justice, Institutional Division, and a $10,000 fine. The Seventh Court of Appeals affirmed appellant's conviction. *Garrett v. State,* No. 07–93–0278–CR (Tex.App.—Amarillo, delivered May 10, 1995). In his petition for discretionary review, appellant questions whether jurors considering and discussing the law of parties and finding him guilty under that theory when the law of parties was not part of the jury charge, constitutes juror misconduct. In the same ground for review appellant also asks us to examine whether a juror can give an affidavit and testify to these facts or whether such conduct is prohibited impeachment of the verdict under Rule 606(b) of the Texas Rules of Criminal Evidence.[1] Because these are important issues which merit our attention, I respectfully dissent to the Court's dismissal of this petition as improvidently granted.

## I. SUMMARY OF PERTINENT FACTS

After being convicted of murder, appellant filed a motion for new trial alleging jury misconduct. He alleged that two jurors "voted to find him guilty of the offense based solely on the law of parties" and that they "did not, and would not have, found [him] guilty of the offense as the sole killer[;]" i.e. "[t]he jury convicted [him] based on a theory of law which was not authorized by the

---

1. Appellant's sole ground for review specifically asks two questions:

> Did the Court of Appeals erred [sic] in concluding that the jurors discussing the law of parties when it was not part of the jury instructions and possibly finding Appellant guilty under that theory was not jury misconduct? Did the Court of Appeals err in finding that the juror affidavits and testimony on this issue was improper impeachment of the jury verdict under Texas Rules of Criminal Evidence 606(b)?

charge of the court on the issue of guilt/innocence." The jury charge did not include any instructions on party culpability.

By way of affidavits, two jurors admitted that the only reason they found appellant guilty of murder was because they believed that he was involved in the murder in some way. For example, they thought that appellant may have been present when the murder occurred, or maybe that he lured the victim to the crime scene, but they did not believe that the evidence had proven that appellant was the actual triggerman. The affidavits read, in pertinent part:

> I do not now, nor did I feel when I voted to return a verdict of "guilty" against Mr. Garrett, that the evidence presented in the trial showed beyond reasonable doubt that Mr. Garrett killed Mr. [the named decedent], i.e., that he was the one who actually pulled the trigger of the gun that killed Mr. [the named decedent]. The evidence presented to me was insufficient, in my opinion, to lead to that conclusion.

> I did vote to find Mr. Garrett guilty of the offense of murder because I felt that the evidence showed that he was probably involved in the murder in some way, probably participated some way in the murder, and was probably present at the time of the murder. I felt that Mr. Garrett had probably lured Mr. [the named decedent] to the scene of the murder.

> At least three other jurors felt the same way as I did. We questioned whether, feeling the way that we did, that conclusion was sufficient to find Mr. Garrett guilty. We caused a note to be sent to the Judge asking for clarification in that respect, and we received the answer that we "had all the law that we could consider". We felt that the judge had not answered our question. We decided that we could find the defendant guilty under those circumstances, and the jury then voted to return a verdict of guilty to the offense of murder.

> That's the only reason that I voted to find Mr. Garrett guilty.

The trial court never ruled on appellant's motion for new trial, and no hearing was held.[2] Pursuant to Rule 31(e)(3) of the Texas Rules of Appellate Procedure, because the trial court never ruled on the motion, it was overruled by operation of law.

## II. COURT OF APPEALS' OPINION

On appeal, appellant's points included a claim that "[t]he trial court erred in failing to hold a hearing on [his] [m]otion for [n]ew [t]rial." The court of appeals held that because "the affidavits do not assert a reasonable ground upon which a finding of jury misconduct could be based, the trial court did not abuse its discretion in failing to hold a hearing on the motion prior to its being overruled by operation of law." *Garrett, supra,* slip op. at 9.

The court of appeals held that "the juror affidavits do not allege jury misconduct on the basis of an agreement to vote guilty in exchange for a lighter punishment[,][n]or do they allege the jurors received and discussed 'other evidence' after retiring to their deliberations." *Garrett, supra,* slip op. at 7. It also held that "the challenge asserted in the affidavits, as well as in the motion for new trial itself, [wa]s simply an attempt to improperly impeach the jury's verdict by revealing the reasons for the conclusions reached and the mental processes by which the jury reached its verdict." *Garrett v. State, supra,* slip op. at 8. Because of such, it concluded that "the affidavits did not rise to the level of demonstrating the type of 'reasonable grounds' for believing jury misconduct may have occurred." *Id.*

## III. APPELLANT'S CONTENTIONS

In his petition for discretionary review, appellant contends that this Court has not clearly settled what is meant by impeaching a jury's verdict under Tex.R.Crim.Evid. 606(b). Appellant further argues that the court of appeals misconstrued the construction given Rule 606(b) by this Court in *Buentello v. State,* 826 S.W.2d 610 (Tex.Cr.App. 1992).

---

**2.** We note that the State did not file controverting affidavits from any other juror pursuant to

Tex.R.App.Pro. 31(b)(1).

Appellant cites *Buentello* to address when juror affidavits are admissible to support a motion for a new trial on the basis of misconduct. Relying on *Buentello,* appellant asserts that the juror affidavits in the instant case, concerning the improper discussion of the law of parties, are relevant and permissible because this matter is relevant to the validity of the verdict. Furthermore, appellant argues that *Hill v. State,* 493 S.W.2d 847 (Tex.Cr.App.1973), should not be relied on because, unlike *Hill,* the affidavits in the instant case demonstrate the discussion of extraneous legal issues.

## IV. STATE'S CONTENTIONS

The State asserts, "The court of appeals properly concluded that there was no jury misconduct and that the juror affidavits and testimony on this issue was improper impeachment of the jury verdict; alternatively, even if the affidavits were relevant to the validity of the verdict, they did not establish jury misconduct." It insists that the law regarding the impeachment of jury verdicts should be viewed in light of the rulings of this Court set forth in a variety of cases, including *Hill v. State,* 493 S.W.2d 847, 849 (Tex.Cr.App.1973), *Daniels v. State,* 600 S.W.2d 813, 816 (Tex.Cr.App.1980), and *Berry v. State,* 588 S.W.2d 932, 935 (Tex.Cr.App. 1979), that a juror may not testify to his beliefs or emotions as they affected the jury's verdict. Relying on this rule, it argues that the juror affidavits in the instant case, which declared the jurors' consideration of the law of parties, were impermissible because they showed the mental process by which the jury reached its verdict. Moreover, it also claims that this Court's holding in *Buentello v. State, supra,* "does not, or should not, override the clear and consistent ruling of this Court that a juror may not testify to his beliefs or emotions as they affected the jury's verdict."

Additionally, the State adds that even if the affidavits were not improper impeachment of the jury's verdict, they do not establish jury misconduct because they do not meet the standards set forth in *Sneed v. State,* 670 S.W.2d 262, 266 (Tex.Cr.App.1984), and *Buentello, supra,* at 615–16, specifically that the affidavits do not show that the law of parties was asserted as a fact by someone professing to know the truth or that the jurors relied on misstatements of law made by someone professing to know the law. However, *Sneed, supra,* and *Buentello, supra,* involved juror discussion of parole law, i.e. the amount of time to be actually served incarcerated on an assessed sentence. Also, the court of appeals, noting that the *Sneed* test is not the exclusive test by which to measure reversible jury misconduct, disagreed with the State's position and held that "appellant's failure to satisfy the elements of the *Sneed* test does not prevent him from raising the issue of reversible jury misconduct." *Garrett, supra,* slip op. at 6. And the State did not file a cross-petition challenging that holding by the court of appeals. *See, e.g., Johnson v. State,* 931 S.W.2d 314, 315 (Tex.Cr.App.1996) and *Green v. State,* 872 S.W.2d 717, 718 (Tex.Cr.App.1994) (examples of cases in which the State filed a cross-petition for discretionary review, challenging part of a court of appeals holding, which was granted and its cross-claim therein was thus addressed); *cf. Wiltz v. State,* 863 S.W.2d 463, 466 n. 5 (Tex.Cr.App.1993)(where the defendant failed to cross-petition on independent state grounds, thus his claim within his response brief was not addressed nor was the case remanded to the court of appeals for further consideration on that claim).

## V. ANALYSIS

Tex.R.Crim.Evid. 606(b) bars the admission of juror testimony or affidavits to impeach a verdict as improper unless it fits into the specified exception. Rule 606(b) reads as follows:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, *except that a juror may testify as to any matter relevant to the validity of the verdict or indictment.* [Emphasis added.] Nor may his affidavit

or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

The emphasized portion of the rule demonstrates the primary difference between Texas Rule 606(b) and its federal counterpart. Federal Rule 606(b) follows the common law rule against impeachment of a juror's verdict except in situations where information is extraneous and prejudicial. The drafters of Texas Rule 606(b) determined that the federal rule was too narrow and this Court adopted a broad exception that allowed for the impeachment of the verdict through all relevant testimony as to both internal and external influences. *Buentello v. State,* 826 S.W.2d at 612–13.

In *Buentello,* this Court discussed the impact of Rule 606(b) on Texas criminal practice and whether the adoption of Texas Rule 606(b) changed the law with respect to testimony that would be permitted in order to impeach a jury's verdict. We held, relying on the text of the rule, that the test for admission of juror testimony on a motion for new trial is whether "the matter sought to be elicited is deemed by the trial court to be relevant to the validity of the verdict." *Id.* at 614.

Accordingly, if the juror affidavits in the instant case are an improper impeachment of the jury's verdict, then they are inadmissible to determine whether the juror's actions constituted jury misconduct. Thus, before determining whether the juror's actions constituted jury misconduct, appellant's first question, it is first necessary to answer his second question, whether the juror affidavits are an improper impeachment of the jury's verdict under Rule 606(b). To determine whether a juror affidavit is relevant to the validity of the verdict, and thus not improper impeachment of the jury's verdict, this Court found that it is necessary to consider, on a case-by-case basis, the court's experiences and observations; the grounds for a new trial set forth in Tex.R.App.Pro. 30(b); and the caselaw which was developed under the predecessor to Rule 30(b). *Id.*

The affidavits in the instant case demonstrate that the jury's decision was based on a theory of law that was not provided in the jury instructions. The jurors take a sworn oath, pursuant to Article 35.22, V.A.C.C.P., that they will render a true verdict "according to the *law* and the evidence[.]" (Emphasis added.) In the instant case, the affidavits show that the jurors violated this oath. The jurors, through the affidavits, are not asserting that they no longer support their verdict or that they want to change their vote. In fact, the affidavits reflect that the jurors believe appellant is guilty, though based upon a theory of law (party culpability) outside the scope of the jury charge.

Because of this, the court of appeals' reliance and application of *Hill v. State,* 493 S.W.2d 847 (Tex.Cr.App.1973) is misplaced. In *Hill,* this Court held that a juror's affidavit, which expressed her doubt as to the defendant's guilt and stated that she and possibly two other jurors had a misconception of the law, did not reflect misconduct but rather appeared to be attempting to impeach her verdict. *Id.* at 848–49. The juror affidavits in the instant case do not reflect that the jurors want to change their decision or that they are having second thoughts as to their decision.

Section 8 under Rule 30(b) provides:

A new trial shall be granted ... [w]here the court finds the jury has engaged in such misconduct that the accused has not received a fair and impartial trial[.]

In *Schalk v. State,* 767 S.W.2d 441, 454 (Tex. App.—Dallas 1988), *aff'd,* 823 S.W.2d 633 (Tex.Cr.App.1991), *cert. denied,* 503 U.S. 1006, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992), one of the cases that the court of appeals relied on, the Dallas Court of Appeals stated that "the basic principle remains that jurors should confine their deliberations to the evidence adduced at trial, lest a fair and impartial verdict according to law be improperly influenced by irrelevant and prejudicial matters not relating to either the guilt or innocence or punishment."

In *Schalk,* the Dallas Court of Appeals noted that even when it is determined that efforts to show that juror discussion or consideration of punishment was impermissible impeachment of the verdict, those cases in

which members of a jury make an agreement to render a guilty verdict in exchange for a lighter punishment are distinguishable. *Id.* The court of appeals in the instant case, relying on *Schalk,* found that the juror affidavits in the instant case "do not allege jury misconduct on the basis of an agreement to vote guilty in exchange for a lighter punishment." *Garrett, supra,* slip op. at 7.

However, the standard set out in *Schalk* is not the exclusive test for determining whether juror affidavits improperly impeach a jury verdict. As established earlier in this opinion, to determine if an affidavit is an improper impeachment of a jury verdict the court must look at each situation on a case by case basis. *Buentello, supra,* 826 S.W.2d at 614. The court of appeals failed to recognize and apply the principle behind the Dallas Court of Appeals' holding: that a verdict should not reflect irrelevant and prejudicial matters not relating to either the guilt or innocence of appellant. Although *Schalk* is not directly on point, the jurors in the instant case violate the principle announced in *Schalk* by considering something other than the law given to them in the jury charge to make a determination as to appellant's guilt. And pursuant to Article 36.14, V.A.C.C.P., the trial court shall deliver to the jury "a written charge distinctly setting forth *the law applicable to the case* [.]" [Emphasis added.] Thus the jury is not free to conjure up law from some other source.

This Court typically does not find post-trial evidence of a jury's discussion of parole laws to be an improper impeachment of the verdict; we even skip any analysis on improper impeachment and move straight to the issue of jury misconduct. For example, in *Lewis v. State,* 911 S.W.2d 1, 7–9 (Tex.Cr.App. 1995), *Buentello, supra,* 826 S.W.2d at 614–16, *Shields v. State,* 809 S.W.2d 230 (Tex.Cr. App.1991), and even *Sneed, supra,* evidence was elicited that jurors discussed the effect of parole or time-to-be-served during the penalty deliberations; yet this Court did not find the jurors' discussion to be improper impeachment of the jury verdict, but rather we determined whether such discussion was reversible jury misconduct.

According to the juror affidavits in the instant case, the jury sent a note to the judge regarding the application of the law of parties; the trial court responded telling the jury that it already had all the law applicable in the jury charge; and the jurors still decided to apply the law of parties. The record contains the trial court's written response to that note, which quotes the note.[3] The affidavits indicate that the jurors relied on the law of parties when they were not instructed to do so. Although the affidavits in the instant case do not deal with the discussion of parole laws, they fall under the theory reflected in *Buentello* and *Shields;* i.e. that jurors, in making their decision, should not rely on a theory of law that was not authorized under the court's charge to the jury.

And finally, section 8 of the former Article 40.03 of the Code of Criminal Procedure, the predecessor of Rule 30(b), is similar to Rule 30(b). It provided, in part, that a new trial, in cases of felony, should be granted when the trial court is of the opinion that jury misconduct has occurred which denied the defendant a fair and impartial trial.

Prior to Rule 30(b), this Court overlooked potential issues of improper impeachment in addressing misconduct claims of jurors discussing the defendant's failure to testify and then considering that failure as a circumstance against the defendant. *Smith v. State,* 530 S.W.2d 827, 829–30 (Tex.Cr.App. 1975); *Davis v. State,* 159 Tex.Crim. 640, 266 S.W.2d 174 (1953). This further reflects the common theory that has been advanced throughout the caselaw prior to and after Rule 30(b) was adopted; i.e. that, in order for a defendant to receive a fair and impartial

---

**3.** Specifically, the trial court's response quotes the relevant portion of the note as stating:

> If the members of the jury think Anthony Garrett was *present* at the murder of [the named decedent], but we are not in agreement that Anthony pulled the trigger; and there was an intent to rob, can Garrett be convicted of capital murder? [Emphasis in original.]

In response to that portion of the note, the trial court responded,

> The law does not permit the Court to answer [that] question. Please continue your deliberations.

trial, a jury's verdict should be confined to the evidence and the law given to the jury at trial.

It is apparent from the affidavits in the instant case that jurors relied on the law of parties, which was not authorized in the charge. Therefore, I conclude that the affidavits concerning juror's reliance on the law of parties are not improper impeachment of the jury's verdict and do allege juror misconduct.

## VI. CONCLUSION

Accordingly, I conclude that appellant's ground for review should be sustained and the judgment of the court of appeals reversed, and the cause remanded to that court to address the State's unaddressed argument "that appellant is precluded from challenging the trial court's failure to hold a hearing because he implicitly agreed to reschedule the hearing at a date beyond that during which the court could rule on the motion." *Garrett, supra,* slip op. at 9. Because the majority does not do so, I respectfully dissent.

BAIRD, J., joins.